# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | 2:07-CR-46 |
| JONATHAN HOGGE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## OPINION AND ORDER

Defendant Jonathan Hogge has filed a motion pursuant to 28 U.S.C. 2255 to vacate, set aside, or correct the 84-month sentence imposed on him by this Court after he pled guilty to running an insurance fraud scam. Hogge's motion comes in at close to 300 pages and raises dozens of arguments, some more fully formed than others. Ultimately, however, none of Hogge's arguments establish a persuasive reason why his sentence needs to be corrected or vacated. His Section 2255 motion will therefore be denied.

## BACKGROUND

In sketching out the necessary background of this case, I'll draw heavily from my lengthy sentencing opinion dated March 29, 2011. [*See* DE 236.] Hogge founded My Smart Benefits, Inc. in 2000 and served as its co-owner, president, and chief executive officer until it closed its doors on October 23, 2003. My Smart Benefits was a third-party administrator of direct-reimbursement dental plans. Direct-reimbursement dental plans are set up by employers as a dental benefit for their employees. They are funded by the employer (with part of the money being contributed by employees) and do not contain insurance or risk-of-loss components.

My Smart Benefits solicited employers to hire it to set up these dental plans as an

employee benefit and to provide for their ongoing administration. The employer would make periodic payments into the plan (typically monthly or quarterly), and My Smart Benefits would take a percentage of each payment as an administrative fee in order to provide claims evaluation, claims processing, and other administrative services. The administrative fee percentage varied depending on the specifics of each contract. In the 63 contracts entered into the record as exhibits (of 1023 total contracts My Smart Benefits secured over its lifetime), the fee percentage ranged from 7% to 22% (though a number of the contracts had no specific percentage at all). The remaining funds contributed by the employers – those left after the administration fee was deducted – were supposed to be placed in segregated individual accounts solely for the payments of any dental claims made by the individual employer and its employees. My Smart Benefits also offered employers stop-loss insurance to protect against catastrophic claims or an unexpectedly high utilization of the dental care plan by employees.

At least, that's how it was all supposed to work. In reality, Hogge flouted many of these procedures. First, the funds contributed by employers were not placed in individual, trusted accounts, but were instead pooled into a few corporate accounts maintained by My Smart Benefits. Whether this was by accident or by design, it created accounting chaos. Hogge maintained total control over these corporate accounts and would routinely transfer funds from these accounts to other general business or personal accounts. Second, starting at least in 2003, Hogge deducted an administrative fee of 30% from all funds coming into every account, even though he was only supposed to be deducting between 7% and 22% (at least for the contracts that are in the record). Third, My Smart Benefits accepted over $200,000 in payments for stop-loss insurance from five of the employers, but it never actually purchased that insurance, which

left employers and employees at risk for a huge loss if costly and unexpected dental costs arose.

Hogge, who exercised complete control over every aspect of My Smart Benefits, was at the center of all this fraudulent conduct, and he profited handsomely from it. Eventually the fraud was discovered, however, and Hogge was charged with 29 counts under 18 U.S.C. §§ 2, 371, 664, 669, 1341, and 1343.

Although Hogge initially retained J. Michael Katz as his defense attorney, because Hogge became indigent during the pendency of the case, Katz was eventually appointed under the Criminal Justice Act. Katz represented Hogge throughout these proceedings, and in the process he filed multiple pretrial motions, including substantive motions regarding the government's discovery. *See* DE 25, 29, 38, 40, 41, 44, 46, 48, 60-63, 73, 84, 99, 130, 148, 150. Trial was scheduled for May 4, 2009, but two weeks before, on April 21, 2009, Hogge notified the Court of his intent to plead guilty. He pled guilty without a plea agreement on April 23, 2009.

Hogge's sentencing was delayed multiple times, but a two-day hearing eventually took place. Katz filed a 41-page sentencing memorandum with thousands of pages of exhibits in advance of this hearing. At the hearing itself, Katz presented three witnesses (two of whom were experts) and filed more than 20 additional exhibits. In its Presentence Investigation Report ("PSR"), the Pretrial Services Office calculated a Sentencing Guidelines range of 210-262 months. In sentencing memoranda filed with this Court, the government argued for a range of 324-405 months while Hogge (via Katz) argued for a range of 63-78 months. During the hearing, however, both sides made various concessions about Hogge's point calculation under the sentencing guidelines, which meant that the government's range ended up somewhat lower

than what was argued in its sentencing memorandum and Hogge's was somewhat higher than what was argued for in his. Ultimately, as explained in detail in my March 29, 2011written opinion, I arrived a sentencing range of 135-168 months.

There is a key point about the final sentencing range that I calculated that needs to be emphasized: I arrived at this guideline range by rejecting almost every one of the government's arguments and accepting almost every one of Hogge's arguments. *See* DE 236 at 16 ("[T]he loss amounts set out above are based largely on what Hogge admitted, rather than on amounts the government attempted to prove."). Then, based on various mitigating factors, I gave a below guideline sentence of 84 months' imprisonment. In other words, Hogge fared *very* well at sentencing.

Hogge did not appeal his sentence. He timely filed his Section 2255 motion on March 30, 2012, but that motion was stricken for failure to comply with local rule page limits. Hogge then timely refiled his motion on May 23, 2012. To reiterate: Hogge now appeals a sentence in which I calculated the guideline range almost entirely in his favor and then gave a sentence significantly below that range.

## DISCUSSION

A motion under Section 2255 allows a federal prisoner "in custody . . . claiming the right to be released" to attack his sentence on the grounds that it was imposed "in violation of the Constitution or laws of the United States, . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

A person convicted of a federal crime may attack his sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, that the court

had no jurisdiction to impose such sentence, the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Relief under § 2255 is reserved for extraordinary situations. *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 633–634, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). A district court may deny a Section 2255 motion without a hearing "where the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *Torzala v. United States*, 545 F.3d 517, 525 (7th Cir. 2008).

## I. Hogge Did Not Directly Appeal his Criminal Conviction

The first issue to address in Hogge's motion is the fact that he never directly appealed his conviction and sentence in this case. That's important because it is black-letter law that a Section 2255 petition can't substitute for an appeal or advance arguments that could have been made earlier. *See Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007); *Reed v. Farley*, 512 U.S. 339, 354 (1994) ("So far as convictions obtained in the federal courts are concerned, the general rule is that the writ of habeas corpus will not be allowed to do service for an appeal."); *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000) ("It is well-established . . . that a § 2255 motion is not a substitute for direct appeal.").

Hogge argues in his motion that the only reason he didn't appeal his sentence was that his counsel acted ineffectively in failing to perfect an appeal. If this were true – *i.e.*, if he explicitly directed Katz to file an appeal and Katz failed to do so – this would obviously be ineffective assistance of counsel. The Supreme Court has stated that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores–Ortega*, 528 U.S. 470, 476–77 (2000). In other words, "[w]hen a

5

defendant asks his attorney to pursue a direct appeal and the attorney does not do so, it is *per se* ineffective assistance of counsel." *Gant v. United States*, 627 F.3d 677, 681 (7th Cir. 2010).

Hogge's Motion is elliptical on the details of this issue, and I thus held an evidentiary hearing on the issue on March 7, 2013. Based on the evidence presented at that hearing, it is now clear to me that Hogge never explicitly directed Katz to file an appeal. To the contrary, in fact, he explicitly stated he did not want to appeal. In this regard, the most important piece of evidence offered at this hearing was a document titled "Waiver of Right to Appeal Sentence" that was prepared by Katz and signed by Hogge himself. It states, in full: "Comes now Defendant JONATHAN E. HOGGE and the Court having imposed sentence herein on March 25th, 2011, said Defendant acknowledges having been advised of his right to appeal such sentence to the United States Seventh Circuit Court of Appeals and does hereby waive such right." At the hearing Hogge acknowledged that he signed this document.

In addition to this evidence, the testimony at the hearing persuasively indicated that Hogge never instructed Katz to appeal. Three people testified at the hearing: Hogge, Hogge's brother Jeffrey Tuemer, and Katz. Hogge admitted his recollection of the weeks following his sentencing was very hazy. Tuemer, who joined Hogge at Katz's office on occasion, also had very few specific memories of conversations between Hogge and Katz about the possibility of appeal. Katz, on the other hand, offered very specific, detailed, and highly credible testimony about the events after Hogge's sentencing on March 25, 2011. That same day Hogge and Katz returned to Katz's office. Katz mentioned the possibility of appeal, briefly mentioned the risk of a cross-appeal by the government (given how relatively favorable my sentence was compared to what the government had sought), and cautioned Hogge that it was a big decision and that he

6

should think carefully about it for a few days. They then met again at Katz's office four days later on March 29, 2011. Katz testified that Hogge told him he had decided not to appeal and that he did not want to risk a cross-appeal from the government. It was at that meeting that Hogge signed the waiver of appeal. The credibility of Katz's recollection is underscored by contemporaneous billing records and electronic files that were maintained at Katz's office.

Given the testimony and evidence presented at the hearing, I have concluded that Hogge did not direct his counsel to file an appeal. As a result, Hogge's failure to file a direct appeal precludes many of the challenges he raises in his Section 2255 motion. Thus, for instance, Hogge makes a number of arguments that are generally related to whether his plea was voluntarily and knowingly made. But Hogge's failure to take a direct appeal bars that argument here: "'[E]ven the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review.' *Bousley v. United States*, 523 U.S. 614, 621 (1998). By failing to take a direct appeal, [the petitioner] procedurally defaulted the argument that he appears to raise here – that he did not knowingly and voluntarily enter his plea of guilty. *Torzala*, 545 F.3d at 522. The same goes for Hogge's other substantive challenges, including:

> 1) his argument that the "agreement" element of the conspiracy charge against him was not met [DE 255 at 8];
>
> 2) his argument that "he never pled guilty nor was told about the offense of aiding and abetting" [DE 255-1 at 10];
>
> 3) his argument that the indictment was improperly amended [DE 255-1 at 13-17];
>
> 4) his arguments related to the government's alleged failure to provide him various discovery materials or his burden in having to make various site visits to review discovery materials [DE 255 at 61, 72, 75; DE 255-1 at 55, 81,131; DE 256 at 2-6, 9-18, 27-29, 43-50];

7

> 5) his arguments related to the Court's calculation of the amount of loss, including the restitution calculation and his objection to the Court's characterization of his fraud as a Ponzi scheme [DE 255-1 at 106; DE 256 at 1-2, 18-26, 31-43].

Having not raised any of these substantive arguments on direct appeal, they were all waived and cannot now be relitigated in a Section 2255 motion. It is true that claims like these that have "been procedurally defaulted" could be raised in a Section 2255 Motion if Hogge "demonstrates that he is 'actually innocent,' or that there is 'cause' and actual prejudice." *Torzala*, 545 F.3d at 522. But Hogge has not attempted to make either of these showings. Therefore, these arguments were all waived.

## II. Ineffective Assistance of Counsel

As noted above, "the general rule [is] that claims not raised on direct appeal may not be raised on collateral review." *Massaro v. United States*, 538 U.S. 500, 504 (2003). There are exceptions to this rule, however. First, criminal defendant's failure to raise a claim on appeal will not preclude a court's review of the claim if the petitioner demonstrates: (1) cause excusing him from his procedural default, and (2) actual prejudice arising from the alleged errors. *Torzala*, 545 F.3d at 522. As noted, Hogge has not attempted to meet either of these prongs, so that exception won't work.

Second, Hogge may raise ineffective-assistance-of-counsel claims, which "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro*, 538 U.S. at 504. To prevail on a claim of ineffective assistance of counsel, Hogge must show both (1) that his attorney's performance was objectively unreasonable in its deficiency such that he was denied the counsel guaranteed by the Sixth Amendment, and (2) that this deficient performance prejudiced his defense, rendering the

outcome of the proceedings against him unreliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Jones v. Page*, 76 F.3d 831, 840 (7th Cir. 1996).

On the first prong, judicial scrutiny of the attorney's performance must be "highly deferential" and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Jones*, 76 F.3d at 840. An attorney's duty isn't to raise every conceivable defense or obstruction, for a "lawyer has an obligation to be truthful and forthright with the court, [and] he has no duty to make a frivolous argument." *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005) (quotation removed). To show prejudice under the second prong, Hogge must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jones*, 76 F.3d at 840. If Hogge can't make a showing on both prongs, his claim must be dismissed. *Id*.

As noted, the contents of Hogge's Section 2255 motion are voluminous and somewhat haphazardly organized. Nevertheless, I will do my best here to address each conceivable ineffective assistance of counsel claim that he may be raising in his motion. In this regard, the government's response brief was particularly coherent in its attempt to organize these potential claims into various categories, a strategy that I have also utilized in the analysis that follows below.

**1. Ineffective Assistance of Counsel Claims Related to Hogge's Guilty Plea** [DE 255 at 14]

A number of Hogge's arguments go to his guilty plea and whether Katz provided ineffective assistance in connection with that plea. For the reasons already explained above, any

9

substantive challenge to whether Hogge's plea was voluntarily and knowingly made have been waived by his failure to perfect a direct appeal. *Torzala*, 545 F.3d at 522. Nevertheless, Hogge can still raise an ineffective-assistance-of-counsel claim related to his attorney's advice in connection with that plea.

"'To demonstrate prejudice arising from a guilty plea allegedly rendered involuntary by counsel's deficient performance, a petitioner must establish that counsel's performance was objectively unreasonable and that, but for counsel's erroneous advice, he would not have pleaded guilty." *Hays v. United States*, 397 F.3d 564, 568 (7th Cir. 2005), citing *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000). "This test is 'highly deferential' to counsel and presumes reasonable judgment and effective trial strategy." *Hays*, 397 F.3d at 568. Hogge can't meet this standard for at least two reasons. First, Hogge never states that, but for Katz's advice, he would not have pled guilty. That fact alone is dispositive of the issue. *See Williamson v. United States*, 2002 WL 771095, at *3 (7th Cir. Apr. 26, 2002) (defendant cannot show prejudice if she "does not allege that she would not have pleaded guilty" but for counsel's ineffective performance).

Nor, moreover, has Hogge met *Strickland*'s deficient performance prong. For instance, Hogge seems to argue that Katz was deficient in advising him of his potential sentence. *See* DE 255 at 19-20. To find that Hogge's guilty plea "was involuntary as a result of ineffective assistance of counsel, his attorney must have given advice that falls below prevailing professional norms." *Coleman*, 318 F.3d at 758 (citing *Chichakly v. United States*, 926 F.2d 624, 628 (7th Cir. 1991)). However, the Seventh Circuit has held that "[a] plea is not rendered involuntary merely because a prediction that a guilty plea will result in a light sentence does not

10

come true." *Chichakly*, 926 F.2d at 630 (quoting *Stout v. United States*, 508 F.2d 951, 953 (6th Cir. 1975)). "An attorney obviously is not able nor is he expected to predict with precision the sentence a judge will impose in order to render effective assistance of counsel . . . ." *Id.*

Here, Hogge's claim regarding the advice he received related to his sentence is contradicted by the plea colloquy, during which he stated that he understood that his sentence "could be different than any estimate your lawyer may have given you" and answered in the affirmative to the following question: "So, do you understand if the sentence turns out to be more severe than you expect it to be, you understand you're still going to be bound by your plea and you're going to have no right to withdraw it?" [DE 172 at 11.] *See Hays*, 397 F.3d at 568 (relying on plea colloquy to reject defendant's argument that he received ineffective assistance of counsel based upon faulty advice regarding likely sentence). The same is true for any arguments related to his counsel's advice regarding the charges in the Indictment, the acts necessary to violate the law, and the defenses available to him: all of these arguments are contradicted by the lengthy plea colloquy. *See* DE 172 at 7-38.

Thus, Hogge has not provided sufficient evidence to overcome the presumption that his counsel was effective in assisting him with a voluntary and knowing plea.

**2. Ineffective Assistance of Counsel Related to the Alleged Failure to Object to Government Withholding of Documents and Prosecutorial Misconduct** [DE 255 at 14]

Hogge next claims that Katz failed to raise the issue that the government was allegedly withholding evidence and engaging in prosecutorial midconduct. This assertion is simply belied by the record, as Katz filed numerous motions that raised this issue in one way or another. *See* DE 48, 63, 73, 84, 99, 183, 193, 197, and 221.

Moreover, even if Katz had failed to object to this alleged behavior by the government,

Hogge's ineffective assistance argument here would still fail. To reiterate: "an attorney renders ineffective assistance of counsel if 1) the attorney's performance fell below an objective standard of reasonableness, and 2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mulero v. Thompson*, 668 F.3d 529, 537 (7th Cir. 2012). There is no indication here at all – much less a resonable probablity – that more frequent or strenuous objections on this point would have made any different to Hogge's sentence. Thus, Hogge has not provided sufficient evidence to overcome the presumption that his counsel was effective in his objections.

**3. Ineffective Assistance of Counsel Claims Related to the Alleged Failure to Object to Presentence Investigation Report** [DE 255 at 25-28; DE 255-1 at 130]

Hogge next argues that Katz was ineffective in the objections he lodged to the Presentence Investigation Report (PSR). Note first that Katz did file voluminous objections to the PSR and a 41-page sentencing memorandum in which he objected to basically every aspect of the guidelines calculation. Hogge just argues that Katz was ineffective because he failed to submit every one of the 142 objections that Hogge believed he had uncovered. Katz was perfectly within the range of an effective counsel to decide which of Hogge's 142 objections were relevant legal arguments and which were irrelevant frivolity. *See Fuller*, 398 F.3d at 652 (a "lawyer has an obligation to be truthful and forthright with the court, [and] he has no duty to make a frivolous argument"); *Taylor v. United States*, 2011 WL 197657, at *6 (N.D. Ind. Jan. 19, 2011) ("An attorney isn't required to disregard his own professional training and experience just because his client demands he ask certain questions or make certain objections"). Hogge has not pointed to any substantive objections to the PSR that Katz failed to raise that would have made a difference in his sentencing, and thus he cannot show prejudice. Indeed, Katz's

objections to the PSR successfully reduced the Guidelines range far lower than the PSR's range and further helped to convince me to significantly depart downward from that range. This strikes me as outstanding – not deficient – performance.

**4. Ineffective Assistance of Counsel Claims Related to the Alleged Failure to Object to Grand Jury Testimony** [DE 255 at 29-77; DE 255-1 at 1-4; DE 256 at 29]

Hogge also vigorously argues that Katz should have objected to the grand jury testimony of Kathy Schwass, a federal investigator who testified at the grand jury. This is a complete nonstarter: once Hogge pleaded guilty, he waived any objections to the grand jury proceedings. *United States v. Contreras*, 272 F. App'x 344, 345 (5th Cir. 2008) ("[B]y pleading guilty, [the defendant] waived all nonjurisdictional defects occurring during the grand jury proceeding."); *United States v. Daniels*, 848 F.2d 758, 759 (7th Cir. 1988) ("[T]o the extent a resolution of factual guilt or innocence blots out a challenge to the procedures used before a grand jury, the defendants have lost their ability to pursue these claims already. They pleaded guilty, and a plea is as effective as a jury verdict in establishing factual guilt."). Katz certainly cannot be deemed ineffective for failing to raise an argument when that argument had already been waived by Hogge's guilty plea.

Hogge also argues that Katz should have demanded a review of the personnel files of government agents like Schwass. There is no evidence that this was an unreasonable decision nor that Hogge was in any way actually prejudiced by it. *See*, *e.g.*, *Liddell v. Kramer*, 2011 WL 5857424, at *10 (C.D. Cal. July 26, 2011) ("Petitioner's contention that counsel should have filed a [motion] to obtain the officers' personnel records fails to establish a claim of ineffective assistance because petitioner cannot demonstrate any likelihood that such a motion would have been granted."); *Osumi v. Giurbino*, 445 F. Supp. 2d 1152, 1163 (C.D. Cal. 2006) ("Petitioner's

13

mere speculation regarding evidence possibly contained in the arresting officers' personnel files is manifestly insufficient to demonstrate petitioner was in any manner prejudiced by trial counsel not filing a [motion].").

**5. Ineffective Assistance of Counsel Claims Related to the Alleged Failure to Object to Use of 2010 Guidelines** [DE 255-1 at 5-6, 130]

Hogge argues that Katz was ineffective in failing to object to the use of the 2010 Sentencing Guidelines. Again, this argument gets Hogge nowhere: this could not be considered ineffective because at the time of Hogge's sentencing it was entirely settled, black-letter law in the Seventh Circuit that district courts were to use the Guidelines in effect at the time of the sentencing, rather than the time of the crime. *See*, *e.g.*, *United States v. Favara*, 615 F.3d 824, 829 (7th Cir. 2010); *United States v. Panice*, 598 F.3d 426, 435 (7th Cir. 2010); *United States v. Nurek*, 578 F.3d 618, 625–26 (7th Cir. 2009). That issue has now been complicated by the Supreme Court's recent decision in *Peugh v. United States*, 133 S.Ct. 2072 (2013) – and more on that case later – but that decision has no bearing on whether Katz was providing effective assistance at the time. Refusing to lodge an objection because a fully settled point of law precludes it is not ineffective assistance.

**6. Ineffective Assistance of Counsel Claims Related to the Alleged Failure to Argue Intended Loss** [DE 255-1 at 17-31, 131]

Hogge argues that Katz was ineffective for failing to present evidence of intended loss at sentencing. Specifically, Hogge wanted Katz to emphasize a conclusion from one of his experts that Hogge did not *intend* for their to be any loss from the fraud he pled guilty to. This argument is frivolous. Under the Sentencing Guidelines, I had to take either the actual or the intended loss, whichever was *greater*. U.S.S.G. § 2B1.1, App. Note 3(A). Since Hogge

14

conceded that there was at least some *actual* loss (Hogge's settlement memorandum argued it was $352,399.52), any argument that the intended loss was zero would be entirely irrelevant. Katz cannot be considered ineffective for failing to present irrelevant evidence.

**7. Ineffective Assistance of Counsel Claims Related to the Alleged Failure to Define Administrative Fees** [DE 255-1 at 31-46, 131]

Hogge next argues that Katz was ineffective because he failed to adequately argue the issue of how administrative fees should have been calculated into the amount of loss. Hogge argues that if the Court would have better understood this point, the calculation of the loss would have been lower, and Katz's failure to sufficiently make this distinction to the Court thus rendered his assistance ineffective. This argument fails for a host of reasons, but the most straightforward reason is that, even if we were to assume Katz did poorly explain this point, I ended up accepting the administrative fee calculation of Hogge's expert – which is what Hogge argues in favor of. So it simply doesn't matter how effective Katz was in explaining this point because I already accepted the calculation that Hogge is now arguing for. Hogge therefore cannot show any prejudice on this point whatsoever, and his ineffective assistance of counsel claims fails on that ground alone.

**8. Ineffective Assistance of Counsel Claims Related to the Alleged Failure to Present Arguments Regarding Independent Fiduciary** [DE 255-1 at 46-92, 131; DE 256 at 15-18]

In addition to the criminal case against him, there was a parallel civil fraud case against Hogge. As part of that case, an Independent Fiduciary calculated the losses of the fraud victims. In turn, I used the Independent Fiduciary's calculation as one component of my overall loss calculation.

Hogge disagrees with the calculations of the Independent Fiduciary in this case and he

prepared a 58-page spreadsheet explaining why. Hogge believes his spreadsheet shows that the amount of unpaid claims calculated by the Independent Fiduciary should have been $114,643.49 rather than $258,386.59. Hogge now argues that Katz was ineffective in failing to present each and every detail of this 58-page document and why, in Hogge's view, the amount of loss calculated by the Independent Fiduciary was incorrect. He thus thinks that Katz's assistance was ineffective because he did not include Hogge's 58-page summary of the actions of the Independent Fiduciary.

But even if that were correct, Hogge could not show prejudice. My lengthy sentencing opinion came to the following conclusion on the amount of loss:

> I have concluded that the best estimate of the loss is between $400,000 and $1,000,000, which, under § 2B1.1(b)(1), amounts to a 14-point increase in the offense level. This total loss includes three component parts:
>
> • $395,596.35 in excess administrative fees taken by My Smart Benefits;
>
> • $206,056.50 in premiums paid to My Smart Benefits for stop-loss insurance that was never purchased; and
>
> • $258,386.59 in unpaid claims as verified by the Independent Fiduciary in the civil case.

[DE 236 at 15-16.] Let's say I *completely* discounted the entirety of the amount calculated by the Independent Fiduciary – something Hogge himself doesn't even argue that Katz should have argued. Even then, the amount of loss would still be in the exact same range: $400,000 and $1,000,000. Thus, there is no prejudice to Hogge and his ineffective assistance of counsel claims on this point fails on that ground alone

   **9. Ineffective Assistance of Counsel Claims Related to the Victim Impact Statements** [DE 255-1 at 93-129, 131; DE 256 at 31]

Hogge argues at length in his motion about the Victim Impact Statements in this case.

16

He believes that there were various calculation errors in them and that they should not count towards his restitution amount.

This, again, is a complete nonstarter: I explicitly refused to consider the amounts in the Victim Impact Statements in calculating the amount of loss. *See* DE 236 at 14 ("It would therefore be duplicative to include both the victim-impact statements and the Independent Fiduciary's amount."). The Victim Impact Statements thus had nothing to do with his sentencing. Consequently, there is no prejudice to Hogge whatsoever on this issue and it has no bearing on the effectiveness of his counsel. Moreover, to the extent that Hogge is trying to challenge the use of the Victim Impact Statements in the calculation of his restitution amount, he is barred from doing so in the context of a Section 2255 Motion. *See Washington v. Smith*, 564 F.3d 1350 (7th Cir. 2009) ("[A] § 2255 motion . . . is unavailable to challenge a restitution order imposed as part of a criminal sentence.").

**10. Other Arguments Regarding Ineffective Assistance** [DE 255 at 14, DE 256 at 22-23]

At one point in his motion, Hogge makes a laundry list of the variety ways he believes Katz was ineffective. DE 255 at 2, 14-15. Most of these – like failing to object to factual errors in the PSR or failing to perfect an appeal – have already been addressed above. Here are the remaining items that I have not yet addressed that Hogge believes reveal Katz's ineffectiveness: Katz failed to (1) conduct adequate investigation and perform pretrial functions, (2) pursue available defenses, (3) subject the government's case to "meaningful adversarial training," (4) investigate mitigating evidence, (5) raise legal issues at sentencing and introduce exculpatory evidence, (6) advocate Hogge's theory of the case, (7) raise legal issues pretrial, (8) maintain meaningful communications with Hogge, and (9) negotiate a plea agreement.

None of these arguments have any traction, however, because he has failed to develop any of them in his nearly 300-page motion. Each one is nothing but an abstract, general statement, without any foundation in concrete factual allegations. Each of these arguments – to the extent a scattershot list can even be called an "argument" – fails for that reason alone. *See United States v. Benjamin*, 2000 WL 217535, *1 (7th Cir. Feb. 18, 2000) (dismissing ineffective assistance of counsel claim as waived where the petitioner "failed to develop and has not supported or presented an argument").

### III. Other Arguments

Hogge also makes a series of other arguments that he styles as evidentiary violations in the vein of *Brady v. Maryland*, 373 U.S. 83 (1963). A *Brady* violation does not, however, arise simply based on the possibility that the undisclosed evidence might have helped the defense. *See United States v. Hamilton*, 107 F.3d 499, 510 (7th Cir.1997). Instead, to establish a valid *Brady* claim, a petitioner must show that the prosecution suppressed the evidence, that the evidence was favorable to the defense, and that the evidence was material to the case. *See United States v. Asher*, 178 F.3d 486, 496 (7th Cir. 1999).

Hogge has not come close to meeting this standard. He seems to believe that there was a *Brady* violation if there are any documents he did not receive from the government. *See*, *e.g.*, DE 255-1 at 59 ("Hogge believes these discs contain exculpatory evidence"). The standards for *Brady* are far higher, and Hogge has not satisfied any of the three prongs of its test.

In addition, Hogge filed an additional "memorandum" in the last few months with additional arguments. Setting aside the fact that he had no authority from the Court to file these additional documents, their substantive arguments are all of no help to him. Mostly these

18

arguments just reiterate what he already argued in his motion. The only new argument is that the Supreme Court's recent decision in *Peugh v. United States*, 133 S.Ct. 2072 (2013) applies here. *Peugh* held that "[a] retrospective increase in the Guidelines range applicable to a defendant creates a sufficient risk of a higher sentence to constitute an ex post facto violation." *Id.* at 2084. But the Seventh Circuit's decision last month in *Hawkins v. U.S.*, __ F. 3d __, 2013 WL 3942324 (July 31, 2013) makes it clear that *Peugh* does not apply under these circumstances because – among other reasons – the Supreme Court's holding does not apply retroactively.

## IV. Certificate of Appealability

Because I am denying Hogge's motion, Rule 11(a) of Rules Governing Section 2254 and 2255 Cases requires that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has held that a district court should issue a certificate of appealability, "[w]here a district court has rejected the constitutional claims on the merits. . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). I conclude that jurists of reason would not find it debatable whether Hogge's Section 2255 motion should be denied. Therefore, the certificate of appealability is denied. If Hogge wishes to appeal this Opinion and Order, he must seek a certificate of appealability from the Court of Appeals under Federal Rule of Appellate Procedure 22.

## CONCLUSION

For the foregoing reasons, Hogge's § 2255 motion [DE 255] is **DENIED** and

**DISMISSED** with prejudice. I **DECLINE** to issue a certificate of appealability. The clerk shall enter final judgment accordingly.

**SO ORDERED.**

**ENTERED**:   September 5, 2013

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
